**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

IN RE:                                    CASE NO. 14 – 04676 – MCF12
**JUAN EDGARDO MORA ROMÁN**
**MARÍA INES JOVÉ RAMOS**
              Debtors                      Chapter 12

AMENDED CHAPTER 12 PLAN- Dated NOVEMBER 13, 2014

The above captioned Debtors, JUAN EDGARDO MORA ROMÁN and MARÍA INES JOVE RAMOS, by and through the undersigned counsel, hereby submit the following proposed Chapter 12 Plan (the "Plan") pursuant to the provisions of 11 U.S.C. Section 1201, et seq., and specifically to 11 U.S.C. Section 1222.

Pursuant to the provisions of Sections 1222 of the Code, Debtors propose the classification and treatment of claims as hereinafter stated.

Creditors and other parties in interest are urged to read and consider this Plan in its entirety since this represents a proposed legally binding agreement between the Debtors, creditors and parties in interest.

ARTICLE I

DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings set forth.

1. "Administrative Creditor" shall mean a person entitled to payment of an Administrative Expense Claim.

2. "Administrative Expense Claim" shall mean any Claim constituting a cost or expense of administration of the Chapter 12 proceedings allowed under 11 U.S.C. Sec. 503(b) and 507(a)(1).

3. "Allowed Claim" shall mean any Claim as allowed pursuant to 11 U.S.C §502. Unless otherwise provided for in this Plan, "Allowed Claim" shall not include interest, cost, fees, expenses or other charges on the principal amount of such Claim from after the Petition Date.

4. "Allowed secured Claim" shall mean any Allowed Claim, which is a Secured Claim and shall include in the amount thereof – unless otherwise stated in this Plan – all interest accrued on or after the Petition Date, fees, costs, and charges as may be allowed.

5. "Bankruptcy Code" or "Code" shall mean the provision of Title 11 of the United States Code, 11 U.S.C. Sections 1201 et seq., as amended from time to time.

6. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Puerto Rico, having jurisdiction over this Chapter 12 proceeding.

7. "Bankruptcy Rules" or "Rules" shall mean the Federal Rules of Bankruptcy Procedures, as amended from time to time.

8. "Bar Date" shall mean the deadline of October 7, 2014 and December 3, 2014, date after which any proof of claim filed will not have any effect on this Plan and will not entitle its holder to participate with other Claims under this Plan.

9. "Claim" shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not

such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

10. "Class" shall mean a category of holders of Claims or Interest that is substantially similar to other claims or interest in such Class.

11. "Confirmation Date" shall mean the date the Order of Confirmation in this Chapter 12 proceeding and becomes a Final Order.

12. "Consummation Date" shall mean the date by which all of the conditions precedent to full consummation set forth in this Plan, shall have be met or waived.

13. "Creditor" shall mean any Person (as herein after defined) who has a Claim against the Debtor, which arose on or before the Petition Date or a Claim of any kind specified in 11 U.S.C. Sections 502(g), 503(h) or 502(I).

14. "Debtors" shall mean the individual JUAN EDGARDO MORA ROMÁN and MARÍA INES JOVE RAMOS

15. "Effective Date of the Plan" shall mean thirty (30) days after the order of confirmation of the plan, becomes a final order and shall b e the date on which there shall be made all cash payments required by the Plan.

16. "Estate" shall mean the property owned by the Debtors that comprises the Chapter 12 estate of the Debtor in the above-captioned Chapter 12 proceeding.

17. "Final Order" shall mean an Order of the Bankruptcy Court (or other court of appropriate jurisdiction) which shall not have been reversed, stayed, modified or amended and the time to appeal from or to seek review or rehearing of such order shall have expired, and about which, no appeal or petition for review or rehearing or certiorari proceedings is

pending, as a result of which such Order shall have become final according to Rule 8002 of the Rules of Bankruptcy Procedure, as such Rules may be amended from time to time.

18. "Lien" shall mean a mortgage, pledge, judgment lien, security interest, charging order, or other charge or encumbrance on Property as is effective under applicable law as of the Petition Date.

19. "Liquidation" shall mean the complete liquidation of the Property of Debtors' Estate, by a duly appointed trustee, according to the provisions of Chapter 7 of the Bankruptcy Code.

20. "Liquidation Analysis" shall mean the comparison of the current assets and liabilities of the Debtors, in order to determine the Liquidation Value of the Debtor's Property.

21. "Liquidation Value" shall mean the value that, any item of the Debtor's Property could be expected to bring during Liquidation.

22. "Order of Confirmation" shall mean the Order of the Bankruptcy Court confirming this Plan, pursuant to 11 U.S.C. § 1225.

23. "Person" shall mean any individual, corporation, partnership, association, Joint Stock Company, trust, unincorporated organization, government or any political subdivision thereof, or other entity.

24. "Petition Date" shall mean June 5, 2014 the date on which the Debtors filed this Voluntary Petition and they commenced the instant Chapter 12 proceedings.

25. "Priority Claim" shall mean any Allowed Claim, other than an Administrative Expense Claim or Priority Tax Claim, to the extent entitled to priority in payment under 11 U.S.C. Section 507(a).

26. "Priority Creditor" shall mean any Creditor that is the holder of a Priority Claim.

27. "Priority Tax Claim" shall mean any Allowed Claim of any Person who is entitled to a priority in payment under 11 U.S.C. Section 507 (a) (8).

28. "Priority Wage Claim" shall mean Allowed Claim of any Person who is entitled to a priority in payment under 11 U.S.C. Section 507 (a) (3).

29. "Property" shall mean the property of the Estate, which shall be administered by the Debtor or the Chapter 12 Trustee.

30. "Pro Rata" shall mean in the same proportion that a Claim or Interest in a given Class bears to the aggregate amount of all Claims (including disputed Claim until allowed or disallowed) or the aggregate number of all Interest in such Class.

31. "Secured Claim" shall mean a Claim, the holder of which is vested with a perfected, non voidable Lien on Property in which the Debtors have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or other applicable non bankruptcy law, and is duly established in this case, to the extent of the value of such holder's interest in the Debtor's interest in such Property, as determined according to 11 U.S.C. Section 506.

32. "Secured Creditor" shall mean a Creditor who has a Secured Claim.

33. "Trustee" shall mean the standing Chapter 12 Trustee, Jose R. Carrion Morales, Esq.

34. "Unsecured Claim" shall mean a Claim, which is other than an Administrative Expense Claim, a Secured Claim or a Priority Claim (including a Priority Tax Claim or a Priority Wage Claim), including any Claim specified in 11 U.S.C. Sections 502 (g), 502 (h) or 502 (I).

35. "Unsecured Creditor" shall mean a creditor that is a holder of an Allowed General Unsecured Claim.

36. "Vesting of Property" Upon full consummation of the plan, all of the property of the Chapter 12 Estate shall vest on the Debtors.

37. "Voluntary Petition" shall mean the voluntary Petition for Relief filed by the Debtors on the Petition Date.

**ARTICLE II**
**ASSETS AND LIABILITIES AS OF PETITION DATE**

**A. ASSETS**

| ASSET | VALUE |
|---|---|
| Debtor's residence. Property built on land of parcel of Francisca Román Delgado (Debtors Aunt), located at SR. 653, Km. 3.3 Arecibo PR (debtors' residence). | $40,300.00 |
| Rústica: Solar identificado como UNO en el plano, radicado en el Barrio Hato Abajo, Arecibo PR. Con un área de 1062.3789 metros cuadrados. En lindes por el NORTE: Sucesión José Román Vélez; SUR solar identificado como DOS en el plano y calle dedicada a uso público; ESTE, remanente; y OESTE, Francisca Róman Delgado | $4,233.34 |
| Rústica: Solar identificado como DOS en el plano, radicado en el Barrio Hato Abajo, Arecibo PR. Con un área de 1059.9161 metros cuadrados. En lindes por el NORTE: Solar identificado como UNO; SUR solar identificado como TRES en el plano; ESTE, calle dedicada a uso público; y OESTE, Francisca Róman Delgado | $4,233.34 |
| Rústica: Solar identificado como TRES en el plano, radicado en el Barrio Hato Abajo, Arecibo PR. Con un área de 1059.9161 metros cuadrados. En lindes por el NORTE: Solar identificado como DOS; SUR solar identificado como CUATRO en el plano; ESTE, calle dedicada a uso público; y OESTE, Francisca Róman Delgado | $4,233.34 |
| Cash Deposited on Bank Account and Cash on Hand | $1,400.00 |
| Deposit with Public Utilities | $200.00 |
| Household Goods | $2,550.00 |
| Clothing | $600.00 |
| Jewelry | $1,000.00 |
| Account Receivable for cows | $8,000.00 |
| Account Receivable for Transportation of Milk | $500.00 |
| Account Receivable for production incentive | $2,100.00 |
| 1990 Ford 350 | $1,800.00 |
| 2000 Nissan Pathfinder | $1,500.00 |

| | |
|---|---|
| Food for Animals: Hay, minerals etc | $1,104.00 |
| Milk Quota | $427,500.00 |
| 20 young calves (less than a year old) @$125.00 | $2,500.00 |
| 20 young calves (more than a year old) @$250.00 | $5,000.00 |
| 24 Pregnant Horras @ $1,300.00 | $31,200.00 |
| 3 Bulls @ $500.00 | $1,500.00 |
| 65 Milking Cows @ $1,400.00 | $91,000.00 |
| Chopper New Holland | $1,500.00 |
| Electric Generator (Brand: ONAN) | $800.00 |
| Milk Extraction Equipment | $11,650.00 |
| Mixer | $1,000.00 |
| Tractor 6610 Ford | $3,000.00 |
| Tractor 8700 Ford | $2,000.00 |
| **TOTAL** | $652,404.00 |

The principal personal asset pertaining to this Estate corresponds to the interest over the milk production rights comprised of 28,500 production liters with an approximate fair market value of $427,500.00. Debtors estimate the current fair market value of each liter in $15.00. A reconciliation of assets and projected realization in the event of a liquidation scenario in the Liquidation Analysis enclosed as **EXHIBIT 1.**

### B. LIABILITIES

Debtors' schedules of liabilities as referenced to the schedules and proof of claims filed in this case indicated that the amount listed and claimed as secured is $725,415.31 (this amount includes IRS Secured Claim of $41,131,.75). Of the aforementioned amount the actual secured amount is $427,500.00 (Value of the Milk Quota). The undersecured portion of the secured creditors (Oriental Bank and Banco Popular) is $256,783.56. The amount of Unsecured Priority Claims under 11 U.S.C. § 507(a) (8) approximate $13,598.97. The amount of General Unsecured Creditors approximates $110,245.85 (this includes claimed and listed amounts) plus the

difference between the amounts listed and claimed as secured and the value of the collaterals, which is $256,783.56. The total projected unsecured amount is $367,029.41 (includes unsecured portion of priority claims). Appraisal for the four (3) real properties (parcels of land) is included as **EXHIBIT 2.**

**ARTICLE III**
**DESIGNATION OF CLAIMS AND INTEREST**

**A. DESIGNATION OF CLAIMS**

The Plan divides the creditors into XZZZZ () classes. The classes of creditors are as follow:

1. **CLASS 1 – TRUSTEE EXPENSES**

   Class 1 shall consist of the Chapter 12 Trustee statutory commission computed pursuant to 28 U.S.C. § 586 (e).

2. **CLASS 2 – ADMINISTRATIVE EXPENSES**

   Shall consist of Allowed Administrative Expense Claims, as provided under Section 503 of the Code, including but not limited to fees and expenses of Debtors' counsel and other professionals as may be allowed by the Bankruptcy Court upon application therefore and after notice and hearing according to the Bankruptcy Code and Rules, plus any unpaid taxes or fees accrued since petition date and cost accrued since the petition date.

3. **CLASS 3 – ORIENTAL BANK**

   Oriental Bank and Trust ("Oriental Bank") has filed two proof of claims (Claims Numbered 8 and 9) as a secured creditor in the total approximate amount of $819,000.00. Oriental Bank is secured by a chattel mortgage over debtors' milk

production rights known as "milk quota" of 28,500 liters and authorized to Debtors by Oficina de Reglamentación de Industria Lechera (ORIL). Debtors propose with the confirmation of the plan to bifurcate Oriental Bank's claim to pay creditor Oriental Bank as a secured creditor in the amount of $427,500.00 (which is the value of the collaterals securing this claims) and as an unsecured creditor in the amount of $391,500.00

4. **CLASS 4 – IRS; INTERNAL REVENUE SERVICE (as a Secured Creditor)**

   The IRS filed Claim numbered 2 in the total amount of $49,686.54 of which the amount of $31,485.87 is secured, $13,321.33 is priority debt and $4,879.34 is part of the General Unsecured Creditors Class.

5. **CLASS 5 – BANCO POPULAR DE PUERTO RICO**

   Banco Popular de Puerto Rico filed claim numbered 3 in the amount of $41,131,75 and 4 in the amount of $37,797.69 which secured by mortgage loans encumbering Debtors milk production rights known as "milk quota" in the amount of $78,929.44 (21,600 liters in second rank). Debtors propose with the confirmation of the plan to pay this creditor as an unsecured claim and therefore as part of the General Unsecured Creditors Class.

6. **CLASS 6 - GENERAL UNSECURED CREDITORS**

   The General Unsecured Creditors Class consists of the following: creditors that have been listed by the Debtors as unsecured creditors, claims that have been filed as unsecured (Claims Numbered 1, 6 and 7) claims that have been filed as secured but due to the value of collateral are not fully secured, and claims that are partially

priority and partially unsecured (Claims Numbered 2). The debt under this class has been estimated by Debtors in the amount of no more than $571,029.41

7. **PAYMENT OF UNSECURED PRIORITY CLAIMS**

The Unsecured Priority Claims debt is $13,598.97. This debt is compromised of the following:

    a. Claim 2 filed by IRS in the amount of $49,686.54 of which $13,321.33 is entitled to priority, $31,485.87 is secured and $4,879.34 will be paid as part of the General Unsecured Creditors Class;

    b. Claim 5 filed by State Insurance Fund in the amount of $277.64 of which $277.64 is entitled to priority.

**ARTICLE IV**
**TREATMENT FOR CLASSES OF CLAIMS AND INTEREST**

**CLASS 1 – TRUSTEES EXPENSES**

The Chapter 12 trustee shall receive and retain as the trustee's percentage fee under this plan an amount equal to ten percent (10%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount not to exceed $450,000.00, three percent (3%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount higher than the $450,000.01 but in excess of $1,000,000.00 and reasonable compensation not to exceed three percent (3%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount that exceeds the before mentioned amount of $1,000,000.00.

**CLASS 2 – ADMINISTRATIVE EXPENSES**

This class will consist of Allowed Administrative Expense Claims, as provided under Section 503 of the Code. This class shall be paid by the trustee in cash and in full as soon as practicable, on the later of (a) the Effective Date or (b) during the first year following the confirmation of the plan. These payments will be made by the Chapter 12 trustee.

**CLASS 3 – ORIENTAL BANK**

Oriental Bank and Trust ("Oriental Bank") has filed two proof of claims (Claims Numbered 8 and 9) as a secured creditor in the total approximate amount of $819,000.00. Oriental Bank is secured by a chattel mortgage over debtors' milk production rights known as "milk quota" of 28,500 liters and authorized to Debtors by Oficina de Reglamentación de Industria Lechera (ORIL). Debtors propose with the confirmation of the plan to bifurcate Oriental Bank's claim to  pay creditor Oriental Bank as a secured creditor in the amount of $427,500.00 (which is the value of the collaterals securing this claims) and as an unsecured creditor in the amount of $391,500.00.

This creditor's legal and equitable interest on the secured amounts will be modified upon the confirmation of this Plan. Considering the value of the properties serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition shall be fixed in the amount of $427,500.00. This amount will be paid as follows:

**Debt Balance Restructuring Upon Confirmation** – On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and of the turnover real and personal property as described herein will be restructured into an

installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full in a total period of 10 years (120 months).

## FIRST FIVE YEARS OF PAYMENT

This creditor will be paid in a total term of TEN (10) years. The FIVE (5) years the Debtors will pay 60 equal payments monthly payments of $2,040.95. The monthly payment of $2,040.95 is based on paying the value of collaterals which is $427,500.00 at an interest rate of 4.00% during 30 years. The first five (5) years will be paid through the Chapter 12 Trustee. Creditor will receive monthly payments of $2,040.95 during the Plan term. After this term of five years (5) years have elapsed the amount owed as principal to Oriental Bank will be $385,911.05. The loan mortgage calculator payment and amortization table are included as **EXHIBIT 3.**

## YEARS SIX (6) THROUGH TEN (10)

Considering that the amount owed as principal to oriental will be $385,911.05, the debtors will make 59 equal payments of $4,046.19 with a balloon payment of $215,717.29 on the 60th month. The monthly payment is $4,046.19 is based on paying the remaining amount owed as principal which is $385,911.05 at an interest rate of 4.75% considering and amortization table of 10 years. After these 59 payments have been paid the debtors will make a balloon payment on the 60th month in the amount of $215,717.29. The loan mortgage calculator payment and amortization table are included as **EXHIBIT 4.**

## ADDITIONAL CLAUSES THAT APPLY TO ORIENTAL BANK'S DEBT DURING THE WHOLE 10 YEAR TERM

If at any moment, Debtors decide to sale or refinance there will be no penalties as to the unpaid balance. Regarding the security agreements over personal property, this creditor will

retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan, except to the assignment of the milk production payments paid weekly by SUIZA DAIRY CORP. The payments proposed derive from the milk production proceeds remitted to this creditor from the Chapter 12 Trustee. The lump sum payment that will be due on the 120th month will come from a refinance or commercial loan that will be obtained by the Debtors. After the Debtors complete their chapter 12 Plan and obtain a discharge they will be in a economic position in which a loan can be obtain. They will also have enough equity in their collaterals to obtain a loan to pay the remaining amout to Oriental Bank. Any additional amount due to this creditor in excess of the secured amounts, as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within Class 7 of the Plan (GENERAL UNSECURED CREDITORS). The amount to be considered as part of the General Unsecured Creditors Class is $391,500.00

**ORIENTAL BANK SHALL RETAIN ALL LIENS IT HAS OVER DEBTORS' COLLATERALS UNTIL THE LAST PAYMENT PROPOSED UNDER THIS PLAN HAS BEEN SATISFIED.**

**CLASS 4 – IRS; INTERNAL REVENUE SERVICE (as a Secured Creditor)**

The IRS filed Claim numbered 2 in the total amount of $49,686.54 of which the amount of $31,485.87 is secured. The IRS will receive monthly payments of $579.86 during the 60 month term of the Chapter 12 Plan. This payment is based on a principal amount owed of $31,485.87 at an interest rate of 4%, during a term of 5 years. The secured amount owed to the IRS will be fully paid through the Chapter 12 Plan. The loan mortgage calculator payment and amortization table are included as **EXHIBIT 5.**

## CLASS 5 – BANCO POPULAR DE PUERTO RICO

Banco Popular de Puerto Rico filed claim numbered 3 in the amount of $41,131,75 and 4 in the amount of $37,797.69 which secured by mortgage loans encumbering Debtors milk production rights known as "milk quota" in the amount of $78,929.44 (21,600 liters in second rank). Debtors propose with the confirmation of the plan to pay this creditor as an unsecured claim and therefore as part of the General Unsecured Creditors Class. The value of the collateral is entirely compromised by the first lien holders Oriental Bank and is not enough to pay the first lien holder (first lien holder is being paid the value of the collateral which is not enough to pay the total amount owed to it with any difference being paid as unsecured debt. Second lien holders are being paid as unsecured creditors.) The total amount of $78,929.44 will be paid as unsecured debt.

## CLASS 6 – GENERAL UNSECURED CREDITORS

The General Unsecured Creditors Class consists of the following: creditors that have been listed by the Debtors as unsecured creditors, claims that have been filed as unsecured (Claims Numbered 1, 6 and 7) claims that have been filed as secured but due to the value of collateral are not fully secured, and claims that are partially priority and partially unsecured (Claims Numbered 2). The debt under this class has been estimated by Debtors in the amount of no more than $571,029.41 which is as follows

| Creditor | Type of debt Claimed/Listed | Amount |
|---|---|---|
| Oriental Bank | Listed (Unsecured Portion of Secured Claim debt after deducting value of collateral) | $391,500.00 |
| Banco Popular (Secured Claims that will | Claim 3 and 4 | $78,929.44 |

| | | |
|---|---|---|
| be paid as Unsecured Creditors because value of collateral is not enough) | | |
| IRS | Unsecured Portion of Claim 2 | $4,879.34 |
| AAA | Listed | $1,900.00 |
| ADM Alliance Nutrition | Listed | $1,000.00 |
| AEE | Claim 6 | $18,373.45 |
| Autoridad de Tierras | Listed | $40,508.85 |
| Federación de Asoc. Pecuarias | Claim 1 | $28,924.13 |
| Oriental Bank | Listed (overdraft) | $3,679.80 |
| Oriental Bank | Listed (deficiency in lease of car, former Eurobank) | $5,000.00 |
| Pan American Grain | Listed | $5,000.00 |
| Capital One | Claim 7 | $980.28 |
| **TOTAL AMOUNT OF UNSECURED CREDITORS THAT WILL PARTICIPATE IN DISTRIBUTION** | | **$571,029.41** |

General unsecured creditors considering those listed by debtors, those who filed a proof of claim and those secured creditors, who after debtor's estimates reached by debtors have agreed to be considered part of their claim as unsecured, are included in this class. The debt under this class has been estimated by debtor in the amount of $571,029.41. Creditors in this General Unsecured Creditors Class will receive a distribution of **$70,000.00** with an interest of 4% yearly during the 5 year term of the Plan. These Creditors will be paid as follows:

These creditors will receive a total amount of principal of $70,000.00 plus the amount of $14,000.00 in interest which totals $84,000.00 The General Unsecured Creditors will be paid the equivalent of the Liquidation Analysis up to $70,000.00. These creditors will receive a "Pro-Rata" distribution as per Liquidation Value and they will be paid after the Chapter 12 Trustee has paid all Priority Creditors.

## ARTICLE V
## PAYMENT OF UNSECURED PRIORITY CLAIMS
## UNDER 11 U.S.C. SECTION 507 (a) (8)

All allowed unsecured priority claims pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the same are allowed, approved and ordered to be paid by the Court, will be paid as stated below. Debtor estimates the debt as in $13,598.97 as follows:

- Claim 2 filed by IRS in the amount of $49,686.54 of which $13,321.33 is entitled to priority, 31,485.87 is secured and $4,879.34 will be paid as part of the General Unsecured Creditors Class;

- Claim 5 filed by State Insurance Fund in the amount of $277.64 of which $277.64 is entitled to priority.

All allowed unsecured priority claims, pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the same are allowed, approved and ordered to be paid by the Court, shall be paid by the Chapter 12 Trustee plus the 4% interest commencing on the effective date and after the date of confirmation of the plan.

The funds will be obtained from the Debtors' dairy farm operation on the basis of consecutive installments remitted biweekly and directly from SUIZA DAIRY CORP. See Schedule Payments under the Plan of Reorganization.


## ARTICLE VI
## PENDING LITIGATION

Debtors state that, as of this date, to the best knowledge and belief there is no pending or threatened litigation that may affect the liability or asset composition of their personal business.

**ARTICLE VII**
**MEANS OF EXECUTION OF THE PLAN AND FEASIBILITY**

Debtors shall have sufficient funds to make all payments then due under this Plan. The funds will be obtained from Debtors' dairy farm operation. A set of business projections, with the bases thereof, will be filed in the next twenty (20) days. On the Consummation Date of the plan, the operation of the named business, all estate assets and allowed claims and valid liens, as set forth in the plan, shall be and become the general responsibility of the reorganized debtors, which shall thereafter have the responsibility for the management, control and administration thereof. Management of debtors' affairs, collection of moneys and distribution to creditors, will be under the control and supervision of the reorganized debtor, which will assume the same role the debtor in possession have assume through this reorganization process.

**ARTICLE VIII**
**DISCHARGE OF CLAIMS**

Except as otherwise provided for in this Chapter 12 Plan or in the Order of Confirmation, the rights granted by this Plan and the payment and distributions to be made hereunder, shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and claims of any kind, nature or description whatsoever against the Debtors.

Upon completing all conditions precedent to the consummation of this plan, all existing claims shall be deemed to be exchanged, satisfied, discharged and release in full; and all holders of claims shall be precluded from asserting any other or future claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Consummation Date, whether or not such holder filed a proof of claim. Upon full payment of the amounts compromised and detailed herein, secured creditors will turn over to the debtor for

cancellation purposes of promissory notes encumbering personal and real property pertaining to this estate.

The order of confirmation of the Plan shall constitute an injunction against the pursuit of any claim or Equity Interest, whether or not a proof of claim or proof of interest based on any such debt, liability, or interest is filed or deemed filed, under 11 U.S.C. 501, such claim is allowed under 11 U.S.C. 502 or the holder of such claim has accepted this Plan in the manner set forth herein.

## ARTICLE VIV
## OBJECTIONS TO CLAIMS

The debtors, the trustee, both at their option, or upon order of the Bankruptcy Court, if requested, may file an objection to any claim as to its validity or amount before the closing of the case. If an objection is made, payment to such claimants will be made only after the entry of a final order by the Court allowing such claim and in accordance with the provisions of the Plan governing such class to which such claims belongs.

The claim of any general unsecured creditor who fails to file a proof of claim or that files its claim after the fixed claims bar date be disallowed by confirmation hearing.

## ARTICLE X
## EXECUTORY CONTRACTS

Any unexpired lease that has not been expressly assumed herein shall is rejected. Specifically, debtors will assumed throughout the bankruptcy proceedings the following contracts:

SUIZA DAIRY CORP.: Milk Production Contract.

Lease Agreements in Schedule G

Water, Electricity, Phone, Insurance Policy,

## ARTICLE X1
## PROVISIONS FOR THE MODIFICATION OF THE PLAN

The Debtors may propose amendments or modifications of this Plan at any time prior to its confirmation pursuant to 11 U.S.C. 1223. After confirmation of the Plan, the Reorganized Debtors may, with the approval of the Court and as long as it does not adversely affect the interest of the creditors, remedy any defect or omission, in such manner as may be necessary to carry out the purposes and effects of the same.

## ARTICLE XII
## CLOSING OF THE CASE

At such time as the case has been fully consummated, this case shall be closed. In order for the case to be close, the trustee shall file a final report and account showing that the case has been fully administered and the Plan has been fully consummated. The Court may conduct a hearing upon application thereof and after notice to all creditors and parties in interest. Thereafter an order approving the trustee's report and closing of the case shall be entered.

## ARTICLE XIII
## COMPLIANCE WITH LAWS AND GOOD FAITH

Debtors believe that the plan complies with all provisions of chapter 12 and any other applicable provision of the Bankruptcy Code, that the plan has been proposed in good faith and not by any means forbidden by law, and that all fees, charges or amounts required to be paid before confirmation have been paid.

**ARTICLE XIV**
**CHAPTER 7 COMPARISON**

Based upon the values of the debtors' assets and the amount of secured and unsecured claims as set forth in the debtors' chapter 12 statement, the debtors believe that the value, as of the effective date of the plan, of property to be distributed under the plan on account of each estate of the debtors were liquidated under chapter 7 of the Bankruptcy Code. Refer to Liquidation Analysis enclosed as **EXHIBIT 1.**

**ARTICLE XV**
**RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction over this case as is conferred upon it by law, rule or statute, or by this Plan, to enable the debtors to consummate any and all proceedings which they may bring before or after the entry of the order of confirmation, in order to carry out the provisions of this Plan, specifically meaning until payment of all creditors as listed in the Treatment of Classes, Article IV, supra.

**RESPECTFULLY SUMITTED,**

In Mayagüez, Puerto Rico, this November 13, 2014

**/s/ JUAN EDGARDO MORA ROMÁN**
**/s/ MARIA INES JOVE**

**ATTORNEY FOR DEBTORS**
**/s/ Homel A. Mercado Justiniano**
**USDC- PR - 229705**
**Calle Malaga #75**
**Urb. Sultana**
**Mayagüez, PR 00680**
**Tel: (787) 831-3577**
**Fax: (787) 805-7350**
**Email: hmjlaw2@gmail.com**
**hmjlaw@yahoo.com**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE:
**JUAN EDGARDO MORA ROMÁN**
**MARÍA INÉS JOVÉ RAMOS**
Debtors

CASE NO. 14 – 04676 – MCF12

Chapter 12

**PAYMENT PROPOSAL TO:**

## CLASS 3 – ORIENTAL BANK

Oriental Bank and Trust ("Oriental Bank") has filed two proof of claims (Claims Numbered 8 and 9) as a secured creditor in the total approximate amount of $819,000.00. Oriental Bank is secured by a chattel mortgage over debtors' milk production rights known as "milk quota" of 28,500 liters and authorized to Debtors by Oficina de Reglamentación de Industria Lechera (ORIL). Debtors propose with the confirmation of the plan to bifurcate Oriental Bank's claim to pay creditor Oriental Bank as a secured creditor in the amount of $427,500.00 (which is the value of the collaterals securing this claims) and as an unsecured creditor in the amount of $391,500.00.

This creditor's legal and equitable interest on the secured amounts will be modified upon the confirmation of this Plan. Considering the value of the properties serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition shall be fixed in the amount of $427,500.00. This amount will be paid as follows:

**Debt Balance Restructuring Upon Confirmation** – On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor

and of the turnover real and personal property as described herein will be restructured into an installment payment plan calling for consecutive monthly payments to pay the secured amount determined herein in cash and in full in a total period of 10 years (120 months).

## FIRST FIVE YEARS OF PAYMENT

This creditor will be paid in a total term of TEN (10) years. The FIVE (5) years the Debtors will pay 60 equal payments monthly payments of $2,040.95. The monthly payment of $2,040.95 is based on paying the value of collaterals which is $427,500.00 at an interest rate of 4.00% during 30 years. The first five (5) years will be paid through the Chapter 12 Trustee. Creditor will receive monthly payments of $2,040.95 during the Plan term. After this term of five years (5) years have elapsed the amount owed as principal to Oriental Bank will be $385,911.05. The loan mortgage calculator payment and amortization table are included as **EXHIBIT 3.**

## YEARS SIX (6) THROUGH TEN (10)

Considering that the amount owed as principal to oriental will be $385,911.05, the debtors will make 59 equal payments of $4,046.19 with a balloon payment of $215,717.29 on the 60th month. The monthly payment is $4,046.19 is based on paying the remaining amount owed as principal which is $385,911.05 at an interest rate of 4.75% considering and amortization table of 10 years. After these 59 payments have been paid the debtors will make a balloon payment on the 60th month in the amount of $215,717.29. The loan mortgage calculator payment and amortization table are included as **EXHIBIT 4.**

**ADDITIONAL CLAUSES THAT APPLY TO ORIENTAL BANK'S DEBT DURING THE WHOLE 10 YEAR TERM**

If at any moment, Debtors decide to sale or refinance there will be no penalties as to the unpaid balance. Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan, except to the assignment of the milk production payments paid weekly by SUIZA DAIRY CORP. The payments proposed derive from the milk production proceeds remitted to this creditor from the Chapter 12 Trustee. The lump sum payment that will be due on the 120th month will come from a refinance or commercial loan that will be obtained by the Debtors. After the Debtors complete their chapter 12 Plan and obtain a discharge they will be in a economic position in which a loan can be obtain. They will also have enough equity in their collaterals to obtain a loan to pay the remaining amout to Oriental Bank. Any additional amount due to this creditor in excess of the secured amounts, as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within Class 7 of the Plan (GENERAL UNSECURED CREDITORS). The amount to be considered as part of the General Unsecured Creditors Class is $391,500.00

**ORIENTAL BANK SHALL RETAIN ALL LIENS IT HAS OVER DEBTORS' COLLATERALS UNTIL THE LAST PAYMENT PROPOSED UNDER THIS PLAN HAS BEEN SATISFIED.**

**CLASS 4 – IRS; INTERNAL REVENUE SERVICE (as a Secured Creditor)**

The IRS filed Claim numbered 2 in the total amount of $49,686.54 of which the amount of $31,485.87 is secured. The IRS will receive monthly payments of $579.86 during the 60

month term of the Chapter 12 Plan. This payment is based on a principal amount owed of $31,485.87 at an interest rate of 4%, during a term of 5 years. The secured amount owed to the IRS will be fully paid through the Chapter 12 Plan.

## CLASS 5 – BANCO POPULAR DE PUERTO RICO

Banco Popular de Puerto Rico filed claim numbered 3 in the amount of $41,131,75 and 4 in the amount of $37,797.69 which secured by mortgage loans encumbering Debtors milk production rights known as "milk quota" in the amount of $78,929.44 (21,600 liters in second rank). Debtors propose with the confirmation of the plan to pay this creditor as an unsecured claim and therefore as part of the General Unsecured Creditors Class. The value of the collateral is entirely compromised by the first lien holders Oriental Bank and is not enough to pay the first lien holder (first lien holder is being paid the value of the collateral which is not enough to pay the total amount owed to it with any difference being paid as unsecured debt. Second lien holders are being paid as unsecured creditors.) The total amount of $78,929.44 will be paid as unsecured debt.

## CLASS 6 – GENERAL UNSECURED CREDITORS

The General Unsecured Creditors Class consists of the following: creditors that have been listed by the Debtors as unsecured creditors, claims that have been filed as unsecured (Claims Numbered 1, 6 and 7) claims that have been filed as secured but due to the value of collateral are not fully secured, and claims that are partially priority and partially unsecured (Claims Numbered 2). The debt under this class has been estimated by Debtors in the amount of no more than $571,029.41 which is as follows

| Creditor | Type of debt Claimed/Listed | Amount |
|---|---|---|
| Oriental Bank | Listed (Unsecured Portion of Secured Claim debt after deducting value of collateral) | $391,500.00 |
| Banco Popular (Secured Claims that will be paid as Unsecured Creditors because value of collateral is not enough) | Claim 3 and 4 | $78,929.44 |
| IRS | Unsecured Portion of Claim 2 | $4,879.34 |
| AAA | Listed | $1,900.00 |
| ADM Alliance Nutrition | Listed | $1,000.00 |
| AEE | Claim 6 | $18,373.45 |
| Autoridad de Tierras | Listed | $40,508.85 |
| Federación de Asoc. Pecuarias | Claim 1 | $28,924.13 |
| Oriental Bank | Listed (overdraft) | $3,679.80 |
| Oriental Bank | Listed (deficiency in lease of car, former Eurobank) | $5,000.00 |
| Pan American Grain | Listed | $5,000.00 |
| Capital One | Claim 7 | $980.28 |
| **TOTAL AMOUNT OF UNSECURED CREDITORS THAT WILL PARTICIPATE IN DISTRIBUTION** | | **$571,029.41** |

General unsecured creditors considering those listed by debtors, those who filed a proof of claim and those secured creditors, who after debtor's estimates reached by debtors have agreed to be considered part of their claim as unsecured, are included in this class. The debt under this class has been estimated by debtor in the amount of $571,029.41. Creditors in this General Unsecured Creditors Class will receive a distribution of **$70,000.00** with an interest of 4% yearly during the 5 year term of the Plan. These Creditors will be paid as follows:

These creditors will receive a total amount of principal of $70,000.00 plus the amount of $14,000.00 in interest which totals $84,000.00 The General Unsecured Creditors will be paid the equivalent of the Liquidation Analysis up to $70,000.00. These creditors will receive a "Pro-

Rata" distribution as per Liquidation Value and they will be paid after the Chapter 12 Trustee has paid all Priority Creditors.

## SUMMARY OF PAYMENTS UNDER THE PLAN

| CREDITOR | MONTHLY PAYMENT MONTHS 1 – 60 | TOTAL PAID DURING LIFE OF THE PLAN |
|---|---|---|
| ORIENTAL BANK | $2,040.95 | $122,457.00 |
| IRS as a Secured Creditor | $579.86 | $34,791.60 |
| TOTAL MONTHLY PAYMENT WITHOUT TRUSTEES FEES | $2,620.81 | $157,248.60 |
| ESTIMATED TRUSTEES FEES FOR PAYMENTS TO SECURED CREDITORS | $263.00 | $15,724.86 |
| TOTAL MONTHLY PAYMENT NEEDED FOR SECURED CREDITORS | $2,883.72 | $172,973.46 |
| UNSECURED CREDITORS | These creditors will receive a total amount of principal of $70,000.00 plus the amount of $14,000.00 in interest which totals $84,400.00. The General Unsecured Creditors will be paid the equivalent of the Liquidation Analysis up to $70,000.00. These creditors will receive a "Pro- Rata" distribution as per Liquidation Value and they will be paid after the Chapter 12 Trustee has paid all Priority Creditors. | $84,000.00 |
| PAYMENT TO PRIORITIES | The priority creditors that have filed claims to this date sum the amount of $13,598.97 | $13,598.97 |
| Estimated Trustees Fees for distribution for Unsecured Creditors and Priority Creditors | | $9,759.90 |
| Amount Needed Including the $172,973.46 of secured creditors plus Trustee Fees and payment to Unsecured Creditors and Priority Creditors | | $280,332.33 (rounded ) |
| ACTUAL PAYMENT THAT WILL BE MADE THROUGH CHAPTER 12 TRUSTES. (payments are computed to be paid in months but the Debtors will make bi-weekly payments because milk production is paid in bi-weekly payments) | $1,130.00 WEEKLY 52 Payments Per Year = $58,760.00 X 5 years = $293,800.00 Any remaining amount after paying the secured creditors will be devoted to priority creditors and once they are paid, the Trustee will pay the Unsecured Creditors. | $293,800.00 |

# SPECIAL PROVISIONS AUTHORIZING
# THE CHAPTER 12 TRUSTEE TO RECEIVE WEEKLY PAYMENTS
# FOR PLAN DIRECTLY FROM SUIZA DAIRY

**SPECIAL PROVISIONS:**

In order to facilitate the implementation of this Chapter 12 plan, Debtors hereby agree and authorizes that, from the net proceeds of the bi-weekly milk liquidations between Debtor and the processing plant to which Debtor delivers its milk production, the processing plant, Vaquería SUIZA DAIRY, will deduct from said net proceeds and disburse directly to the Chapter 12 Trustee the weekly amount of:

- $1,130.00 per week for 260 straight weeks (5 year) for a total amount of $293,800.00

provided that the net proceeds of said liquidations reach said amount after making the deductions indicated above and any other provide for by any applicable law or made in the regular course of business of the processing plant.

Said withholdings and monthly payments will be processed by the processing plant within ten (10) working days after the end of each and every calendar month, commencing on the next calendar month following the Effective Date of the Chapter 12 Plan, these funds, together with any other funds provided by Debtor to the Chapter 12 Trustee as per the terms of the confirmed Chapter 12 plan, will be distributed by the Trustee in accordance with the terms of the confirmed Chapter 12 plan.

Once the Chapter 12 plan is confirmed by an order entered by the Bankruptcy Court that becomes final and inappealable, Debtor will give prompt written notice to the processing plant of the exact Effective Date as well as of any further change that may affect this procedure, including, but not limited to, (a) amendments to the Chapter 12 plan approved by the Court (b) the dismissal of the case (c) the conversion of this case to one under any other Chapter of the Bankruptcy Code and/or (d) the termination of Debtor's obligation to make payments to the Chapter 12 Trustee.

It is understood that all amounts agreed to be deducted from Debtor and disbursed by SUIZA DAIRY are subject to the essential condition that the net proceeds of the milk liquidations be sufficient to cover the same after making such deductions provided by law and those expenses, costs and/or advances made and/or charged by SUIZA DAIRY.

Any assignments of funds to third parties to be deducted from Debtor's milk liquidations and paid through SUIZA DAIRY will continue to be deducted after the payment of the Chapter 12 Plan has been discounted.